UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY H. MUEGGE,

        Plaintiff,

v.                                                      Case No.  8:05-cv-354-T-24 MAP

HERITAGE OAKS GOLF AND
COUNTRY CLUB, INC., ET AL.,

        Defendants.

_____/

**ORDER**

This cause comes before the Court on several motions for summary judgment (Doc. No. 114, 115, 116, 118, 121, 123).  Plaintiff opposes these motions.  (Doc. No. 149).

**I.  Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.

When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial.  Id. at

324.  In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

## II.  Background

Plaintiff, a resident of Indiana, spends her winters at her daughter and son-in-law's house in Sarasota, Florida ("the residence"), located in the Club Homes III subdivision.  Defendant Heritage Oaks Club Homes III Association, Inc. ("Club Homes III") is a homeowners' association consisting of twenty-eight homes located within the Heritage Oaks Golf and Country Club community.  (Doc. No. 120, p. 23-24).

On February 24, 2004, while Plaintiff was staying at the residence, someone or some people entered the residence while Plaintiff was out and took Plaintiff's jewelry, money, and papers.[1]  (Doc. No. 149: Plaintiff's affidavit, ¶ 2).  When Plaintiff returned to the residence, she found seven paint splotches on the driveway.  (Doc. No. 149: Plaintiff's affidavit, ¶ 14). Plaintiff went inside the residence through the garage and later found the front door to the residence open, despite the fact that the door is always locked and deadbolted and seldom used. (Doc. No. 149: Plaintiff's affidavit, ¶ 15).  Plaintiff also noticed that the garage door was "abnormally squeaking and seemed to wobble along the track."  (Doc. No. 149: Plaintiff's affidavit, ¶ 18).  Plaintiff's son-in-law later found that the garage door had been damaged by

---

[1]Plaintiff left the residence mid-morning and returned sometime in the afternoon.  (Doc. No. 130: Plaintiff's depo, p. 195).

2

what appeared to be the application of extreme upward force.  (Doc. No. 149: Victor
Bardonner's affidavit, ¶ 8).  Plaintiff did not realize until two days later that her jewelry, money,
and papers had been taken.  (Doc. No. 149: Plaintiff's affidavit, ¶ 22).

On March 1, 2004, Deputy James Sullivan of the Sarasota County Sheriff's Office
responded to a follow-up call from Plaintiff.  (Doc. No. 129).  Deputy Sullivan went to the
residence and observed beige color paint on: (1) the underside of the inside door handle of the
front door, (2) the door jamb of the bathroom where a pair of earrings had been kept on the
counter, and (3) a file folder that was inside the case where the jewelry, money, and papers were
taken from.  (Doc. No. 129).  Plaintiff contends that there was also paint on the handle of the
case where the jewelry, money, and papers were taken from.  (Doc. No. 130-2, p. 26-27).

Plaintiff told Deputy Sullivan that she leaves the garage door open approximately twelve
inches for the cat.  (Doc. No. 129).  Deputy Sullivan went into the garage and noticed that the
line of dirt that is left behind from the garage door hitting the floor showed signs of being
disturbed into the garage, rather than outward as would be expected from the exhaust of a car.
(Doc. No. 129).  Deputy Sullivan also noticed that the dirt was in an area where the car was not
normally parked.  (Doc. No. 129).  Additionally, Deputy Sullivan noticed two black marks in the
garage that were consistent with scuff marks made from a shoe.  (Doc. No. 129).  Deputy
Sullivan concluded that it was possible that the suspect entered the garage through the slightly
opened garage door and exited through the front door.  (Doc. No. 129).

During the month of February 2004, Defendants Thomas Haack, Scott McCormack, and
Michael Lunsmann (collectively referred to as "the Painter Defendants") worked on a painting
crew for Defendant Cotton & Martin Custom Painting ("Cotton & Martin").  (Doc. No. 111-2, ¶

2; Doc. No. 112-2, ¶ 2; Doc. No. 113-2, ¶ 2).  The crew was designated to work on a job for

Club Homes III.  (Doc. No. 111-2, ¶ 2; Doc. No. 112-2, ¶ 2; Doc. No. 113-2, ¶ 2).  The paint job

lasted from mid-February 2004 through early March of 2004.  (Doc. No. 111-2, ¶ 2; Doc. No.

112-2, ¶ 2).

Plaintiff believes that the Painter Defendants, along with the president of Cotton &

Martin (Ted Martin), entered the residence and took her property.  Therefore, she filed a

complaint, in which she alleges the following: (1) a negligence claim against Club Homes III for

failing to provide proper security for the residence; (2) a negligence claim against Argus

Property Management, Inc. ("Argus") for failing to provide honest employees to perform the

contracted painting services, for failing to provide proper supervision of the painters, and for

failing to provide proper security for the residence; (3) a claim  for negligent hiring, retention,

and supervision against Cotton & Martin; (4) a respondeat superior claim against Cotton &

Martin for the acts of its painters allegedly taking her property; and (5) a claim against Ted

Martin and the Painter Defendants, individually and/or jointly, for taking her property.  All of the

defendants have filed motions for summary judgments.[2]

### III.  The Painter Defendants' Motions for Summary Judgment

The Painter Defendants move for summary judgment on the claim asserted against them

that they took Plaintiff's property.  Plaintiff is not specific as to the basis for her claim against

the Painter Defendants, and the Painter Defendants have construed the claim against them as

being a claim either for conversion or for civil theft.

---

[2]Plaintiff named three additional alleged painters as defendants in her complaint (Robert Lee, Kenneth Gates, and George Migneron); however, these defendants were dismissed without prejudice due to Plaintiff's failure to timely serve them.  (Doc. No. 56).

Plaintiff appears to base her claim against the Painter Defendants on the following: (1) two painters were looking into the windows of the residence on the morning of February 24, 2004, before the property was taken;[3] (2) there were seven paint splotches on the driveway of the residence after the alleged theft/conversion occurred;[4] and (3) there was paint found inside the residence that was similar to the paint being used by the Painter Defendants.  For the reasons stated below, the Court finds that this evidence is not sufficient to withstand the Painter Defendants' motions for summary judgment on the claim asserted against them, whether it be for conversion or civil theft.  Accordingly, the Court grants the Painter Defendants' motion for summary judgment.

**A.  Civil Theft**

"To establish a claim of civil theft, a plaintiff must prove, by clear and convincing evidence, that the defendant knowingly obtained or used the property of another with the intent to temporarily or permanently deprive the other person of a right to or a benefit from the property."  Carl v. Republic Security Bank, 282 F. Supp.2d 1358, 1371 (S.D. Fla. 2003)(citation

---

[3]Plaintiff's depo, p. 156-58.  However, Plaintiff cannot identify or describe these painters beyond stating that one was tall and thin and the other one was of average height.  (Plaintiff's depo, p. 158).  Plaintiff cannot describe either painter's face.  (Plaintiff's depo, p. 158).

[4]Plaintiff contends that since there were seven painters (the six painters originally sued, plus the president of Cotton & Martin, Ted Martin), the seven splotches must have resulted from the seven painters putting their paint cans down on her driveway.  Plaintiff further argues that the seven paint splotches show that all seven alleged painters were involved in the theft/conversion of her property.  (Plaintiff's depo, p. 161-63).  However, Plaintiff admits that she does not know whether all seven of the alleged painters were at the residence or even on site on the day of the alleged theft/conversion.  (Plaintiff's depo, p. 162-63).  Even construing the evidence in the light most favorable to Plaintiff, as the Court must, the seven paint splotches are not evidence that supports the conclusion that all seven of the alleged painters were involved in the theft/conversion of her property.  At best, this evidence supports the conclusion that one or more painters were outside of the residence–a fact which does not appear to be disputed in this case.

5

omitted); see also Fla. Stat. §§ 812.014(1), 772.11(1).  Some Florida courts have described the

clear and convincing standard as follows:

> Clear and convincing evidence requires that the evidence must be found to be
> credible; the facts to which the witnesses testify must be distinctly remembered;
> the testimony must be precise and explicit and the witnesses must be lacking in
> confusion as to the facts in issue. The evidence must be of such weight that it
> produces in the mind of the trier of fact a firm belief or conviction, without
> hesitancy, as to the truth of the allegations sought to be established.

Anthony Distributors, Inc. v. Miller Brewing Co., 941 F. Supp. 1567, 1575-76 (M.D. Fla.

1996)(quoting Westinghouse Electric Corp. v. Shuler Brothers, Inc., 590 So. 2d 986, 988 (Fla. 1st

DCA 1991)).

The Painter Defendants argue that Plaintiff has not shown by clear and convincing

evidence that they took her property.  The Court agrees.  The evidence before the Court suggests,

at best, that one or more painters may have taken Plaintiff's property; however, the evidence

does not point to any particular painter as the one who may have taken Plaintiff's property.[5]  The

Court notes that Plaintiff initially sued three additional alleged painters[6], and the evidence before

the Court could just as easily support the conclusion that one or more of the other alleged

painters took Plaintiff's property.  There is simply no evidence before the Court that is specific

to the Painter Defendants, and as such, a jury could not find in favor of Plaintiff against any of

the Painter Defendants on a civil theft claim based on the evidence before the Court, because

such a verdict would be based on speculation and conjecture.  As such, the Painter Defendants

---

[5]The Court notes that the Painter Defendants filed affidavits stating that they did not enter the residence or take anything out of the residence.  (Doc. No. 111-2: McCormack affidavit, ¶ 7; Doc. No. 113-2: Lunsmann affidavit, ¶ 8; Doc. No. 112-2: Haack affidavit, ¶ 5, 6).

[6]Robert Lee, Kenneth Gates, and George Mignerson

are entitled to summary judgment to the extent that Plaintiff is asserting a claim for civil theft.

**B.  Conversion**

To establish a claim for conversion, a plaintiff must prove, by a preponderance of the evidence, that the defendant committed an unauthorized act that deprived the plaintiff of her property permanently or for an indefinite time.  See Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1291 (11th Cir. 2001)(citations omitted); Small Business Administration v. Echevarria, 864 F. Supp. 1254, 1264 (S.D. Fla. 1994)(citations omitted).  The Painter Defendants argue that they are entitled to summary judgment on this claim, because Plaintiff has not put forth any evidence that is specific to them and shows that they took her property.  The Court agrees.

As stated above, the evidence before the Court could just as easily support the conclusion that the other alleged painters took Plaintiff's property.[7]  There is no evidence before the Court that is specific to Lunsmann, McCormack, or Haack, and as such, a jury could not find in favor of Plaintiff against any of the Painter Defendants on a conversion claim based on the evidence before the Court, because such a verdict would be based on speculation and conjecture.  Since Plaintiff cannot show, based on the evidence before the Court, that it is more likely than not that one or more of the Painter Defendants took Plaintiff's property, the Painter Defendants are entitled to summary judgment to the extent that Plaintiff is asserting a conversion claim.[8]

---

[7]In fact, the evidence before the Court merely supports the conclusion that someone who came in contact with paint may have taken Plaintiff's property.

[8]The Court notes that it is not proper to sue the Painter Defendants simply because they are painters and then attempt to shift the burden to each of them to prove that they did not take Plaintiff's property.  "Burden-shifting does not come into play unless and until it can be shown that the alleged defendants acted wrongfully--that is, where there is evidence of wrongdoing shown on the part of each defendant and only the issues of causation and apportionment of liability remain."  State Department of Environmental Regulation v. CTL Distribution, Inc., 715

7

## IV.  Cotton & Martin Defendants' Motion for Summary Judgment

Cotton & Martin and its president, Ted Martin, (collectively referred to as "Cotton & Martin Defendants") move for summary judgment on the claims asserted against them, namely: (1) a respondeat superior claim against Cotton & Martin for the acts of its painters allegedly taking Plaintiff's property; (2) claims for negligent hiring, retention, and supervision against Cotton & Martin; and (3) a claim against Ted Martin for his alleged involvement in the taking of Plaintiff's property.  Accordingly, the Court will analyze each claim.

### A.  Respondeat Superior

Plaintiff asserts a respondeat superior claim against Cotton & Martin for the acts of its painters allegedly taking Plaintiff's property.  "Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer."  Iglesia Cristiana La Casa Del Senor, Inc. v. L.M., 783 So. 2d 353, 356-57 (Fla. 3d DCA 2001)(citations omitted).  "An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master."  Id. at 357 (citation omitted).  Cotton & Martin argues that it is entitled to summary judgment on this claim, and the Court agrees.

To begin with, in order for Cotton & Martin to be liable for the taking of the property,

_____

So. 2d 262, 264 (Fla. 3d DCA 1998); see also Conley v. Boyle Drug Co., 570 So. 2d 275, 281 (Fla. 1990).

Plaintiff must establish that one of Cotton & Martin's painters took her property.  See Anderson Trucking Service, Inc. v. Gibson, 884 So. 2d 1046, 1051 (Fla. 5th DCA 2004).  Even assuming arguendo that Plaintiff could establish that one or more of Cotton & Martin's painters took Plaintiff's property, Plaintiff would have to show that the property was taken during the course of the painters' employment and to further a purpose or interest of Cotton & Martin.  Plaintiff has not put forth any evidence to show that such occurred.

In order to show that the taking of Plaintiff's property occurred in the course of the painters' employment, Plaintiff must show that the conduct is of the kind the painters were employed to perform.  The Court notes that "[a]lthough the scope of employment is considerably broader than explicitly authorized acts of the employee, it does not extend to cases in which the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do."  Carter v. America Online, Inc., 208 F. Supp.2d 1271, 1279 (M.D. Fla. 2001)(internal quotations omitted; citations omitted).

Cotton & Martin submitted the affidavit of Ted Martin, in which he stated that Cotton & Martin was hired to paint only the outsides of the homes in the Club Homes III subdivision, so the painters had no reason to enter inside any of the units.  (Doc. No. 128-2: Martin affidavit, ¶ 4). As such, there is no evidence before the Court that suggests that Cotton & Martin authorized any of the painters to enter the residence, and therefore, the evidence suggests only that if one or more painters did enter the residence and took Plaintiff's property, the painters stepped aside from their employment to do so.

Furthermore, in order to succeed on this claim, Plaintiff must show that the conduct

occurred substantially within the time and space limits authorized or required by the work to be performed.  As previously stated, the evidence before the Court shows that the painters were not authorized to enter into any of the units.

Additionally, in order to succeed on this claim, Plaintiff must show that the conduct was done, at least in part, in order to serve a purpose or interest of Cotton & Martin.  There is no evidence before the Court that would support a finding that one or more of Cotton & Martin's painters entered the residence or took Plaintiff's property in order to serve a purpose or interest of Cotton & Martin.  See Gibbs v. Air Canada, 810 F.2d 1529, 1532-33 (11th Cir. 1987)(finding that it was clear that the employee's act of stealing property was in furtherance of his own personal interests).

Accordingly, the Court finds that even assuming arguendo that Plaintiff could establish that one or more of Cotton & Martin's painters took Plaintiff's property, Plaintiff has not submitted any evidence showing that the entry into her residence or taking of her property occurred within the scope of the painters' employment with Cotton & Martin.  As such, the Court grants Cotton & Martin summary judgment on this claim.

## B.  Negligent Hiring, Retention, and Supervision

Plaintiff also asserts a claim of negligent hiring, retention, and supervision against Cotton & Martin.  Unlike a claim based on respondeat superior, a claim of negligent hiring, retention, or supervision is based on the negligence of the employer.  See Island City Flying Service v. General Electric Credit Corporation, 585 So. 2d 274, 278 (Fla. 1991)(citation omitted).  Claims based on negligent hiring, retention, or supervision allow recovery against an employer for acts of an employee that are committed outside of the scope and course of employment.  See Garcia v.

<u>Duffy</u>, 492 So. 2d 435, 438 (Fla. 2d DCA 1986).  In order for Plaintiff to succeed on a claim for

negligent hiring, retention, or supervision against Cotton & Martin, Plaintiff must first establish

that one or more of its painters took Plaintiff's property.  See <u>Anderson Trucking</u>, 884 So. 2d at

1052.  However, as explained below, the Court finds that Cotton & Martin is entitled to summary

judgment on Plaintiff's negligent hiring, retention, and supervision claims.

### 1.  Negligent Hiring

As stated above, in order for Plaintiff to succeed on a claim for negligent hiring against

Cotton & Martin, Plaintiff must first establish that one or more of its painters took Plaintiff's

property.  While there is evidence that one or more painters may have taken Plaintiff's property

(due to the paint being found inside the residence), there is no evidence showing which specific

painter or painters may have done so.  Furthermore, assuming arguendo that Plaintiff could

establish that one or more of Cotton & Martin's painters took Plaintiff's property, in order to

succeed on a claim of negligent hiring, Plaintiff must show that (1) Cotton & Martin was required

to make an appropriate investigation of the painter(s) that took Plaintiff's property and failed to

do so; (2) an appropriate investigation would have revealed the unsuitability of the painter(s) for

the particular duty to be performed or for employment in general; and (3) it was unreasonable for

Cotton & Martin to hire the painter(s) in light of the information it knew or should have known.

See <u>Malicki v. Doe</u>, 814 So. 2d 347, 362 (Fla. 2002)(citation omitted).

Cotton & Martin argues that there is no genuine issue of material fact regarding the

negligent hiring claim that precludes summary judgment.  Specifically, it submitted the affidavit

of Ted Martin, in which he states: (1) Cotton & Martin checked the backgrounds of the painters

that were working at Club Homes III on February 24, 2004; and (2) Martin did not and does not

have any notice or reason to believe that any of the painters had a background that would suggest that they were likely to break into any units or steal from residents.  (Doc. No. 128-2, ¶ 7). Plaintiff has not submitted any evidence in response that shows that a jury could find in her favor on the negligent hiring claim.

Specifically, the Court notes that Plaintiff has not shown that Cotton & Martin was required to make a more thorough investigation of the painter(s) that took Plaintiff's property but failed to do so.  The Court finds <u>Williams v. Feather Sound, Inc.</u>, 386 So. 2d 1238 (Fla. 2d DCA 1980), instructive.  In <u>Williams</u> the court stated that "in analyzing the employer's responsibility to check out an applicant's background, it is necessary to consider the type of work to be done by the prospective employee." <u>Id.</u> at 1240.  In <u>Williams</u>, the employee at issue was initially hired to do outside maintenance work on the grounds of condominiums, such as mowing, weeding, and edging.  <u>See</u> <u>id.</u> at 1239.  The court stated that the employer did not have any obligation to make an independent inquiry concerning the employee's background, since he was hired to do outside work with only incidental contact with tenants.  <u>See</u> <u>id.</u> at 1240.

In the instant case, Cotton & Martin was hired to paint only the outsides of the homes in the Club Homes III subdivision.  (Doc. No. 128-2: Martin affidavit, ¶ 4).  As such, its painters were doing outside work with only incidental contact with residents.  Therefore, based on <u>Williams</u>, Cotton & Martin did not have an obligation to make an independent inquiry of the painters' backgrounds.  However, Cotton & Martin submitted evidence that it did make such an inquiry, as it conducted background checks.  Plaintiff has not cited any authority showing that Cotton & Martin was required to do anything further, nor has she submitted any evidence that raises a genuine issue of material fact as to whether Cotton & Martin conducted background

checks.

While Plaintiff has submitted what appears to br criminal records of four of the painters[9]
(Lee, Lunsmann, McCormack, and George Migneron[10]), Plaintiff has not shown that Cotton &
Martin had any knowledge of the painters' criminal records, or that it should have had such
knowledge.  See Garcia, 492 So. 2d at 441 (stating that there is no requirement, as a matter of
law, that the employer must make an inquiry with law enforcement agencies about an employee's
possible criminal record).  Furthermore, Plaintiff has not shown that had Cotton & Martin had
knowledge, or should have had knowledge, of the painters' criminal records, it would have been
unreasonable for Cotton & Martin to hire Lunsmann, Migneron, and McCormack as painters.
Their criminal records appear to show the following: (1) Lunsmann was charged with battery of
his spouse in 1992; (2) Migneron was charged with driving with a suspended license in 1989; and
(3) McCormack was charged in 2003 with possession of drugs (Cannabis) and drug
paraphernalia, reckless driving, fleeing police, and driving with an expired license; McCormack
was charged with violating his probation in 1997; and McCormack was charge with possession of
Cannabis in 2000 and again in 1998.  Plaintiff has not cited any authority to show that it is
unreasonable to hire people charged with these crimes as painters.  See Island City Flying
Service, 585 So. 2d at 277 (stating that an employer who hires a person with a criminal record is
not automatically liable for all intentional torts of the employee; instead there must be a
connection and foreseeability between the prior offense and the current offense).

---

[9]Doc. No. 149, Ex. 5-9.

[10]Migneron was named as a defendant and dismissed due to Plaintiff's failure to serve
him.

The Court notes that Lee was charged with contempt in 1991 and with violating his probation in 1999 (it appears that he was on probation for committing burglary and aggravated assault).  Arguably, if Plaintiff had shown that Cotton & Martin knew, or should have known that Lee was convicted of burglary, it may have been unreasonable for Cotton & Martin to hire him as a painter.  However, in order to succeed on a negligent hiring claim, Plaintiff would also have to show that Lee took Plaintiff's property, and Plaintiff has not submitted sufficient evidence to allow a jury to find that Lee did so.  Accordingly, the Court finds that there is no genuine issue of material fact precluding summary judgment on Plaintiff's negligent hiring claim.

## 2.  Negligent Retention and Supervision

Likewise, there is no genuine issue of material fact precluding summary judgment on Plaintiff's negligent retention and supervision claims.  "The principal difference between negligent hiring and negligent retention [or supervision] as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness."  Garcia, 492 So. 2d at 438 (citations omitted); see also Samedi v. Miami-Dade County, 134 F. Supp.2d 1320, 1352-53 (S.D. Fla. 2001)(citations omitted); Department of Environmental Protection v. Hardy, 907 So. 2d 655, 660 (Fla. 5th DCA 2005).  Negligent retention or supervision "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment."  Garcia, 492 So. 2d at 438-39.

Cotton & Martin submitted evidence that nothing occurred subsequent to the hiring of the painters that would have placed it on actual or constructive notice that any of the painters were unfit.  Specifically, Cotton & Martin submitted the affidavit of Ted Martin, in which he stated that

14

(1) he did not and does not have any notice or reason to believe that any of the painters had a background that would suggest that they were likely to break into any units or steal from residents; and (2) he never received a complaint or suggestion of burglary or theft as to any of the painters.  (Doc. No. 128-2, ¶ 7).  Plaintiff has not submitted any evidence that anything occurred subsequent to the hiring of the painters that would have put Cotton & Martin on actual or constructive notice that any of the painters were unfit.  Accordingly, Cotton & Martin is entitled to summary judgment on Plaintiff's negligent retention and supervision claims.

### C.  Ted Martin's Actual Involvement in the Taking of Plaintiff's Property

Plaintiff asserts a claim against Ted Martin, alleging that he was involved in the taking of her property.  Plaintiff states that she saw Ted Martin on the grounds near the residence as a painter on February 24, 2004.  (Doc. No. 149, Exhibit: Plaintiff's affidavit).  Therefore, she argues that since there were seven paint splotches on the driveway after her property was allegedly taken, the seventh paint splotch is evidence that Martin was involved in the taking of her property.  Martin responds that such evidence is not sufficient to withstand a motion for summary judgment. The Court agrees.  For the same reasons that the Court granted summary judgment in favor of the Painter Defendants, the Court grants summary judgment in favor of Martin on this claim.

### V.  Club Homes III and Argus' Motion for Summary Judgment

Plaintiff asserts the following claims against Club Homes III and Argus: (1) a negligence claim against the Club Homes III for failing to provide proper security for the residence; (2) a negligence claim against Argus for failing to provide honest employees to perform the contracted painting services; (3) a negligence claim against Argus for failing to provide proper supervision

of the painters; and (4) a negligence claim against Argus for failing to provide proper security for the residence.  Club Homes III and Argus move for summary judgment on all of these claims. Accordingly, the Court will address each claim.

### A.  Background

Club Homes III is a homeowners' association consisting of twenty-eight homes, which are located within the Heritage Oaks Golf and Country Club community.[11]  (Doc. No. 120, p. 23-24).  Club Homes III has the duty of maintaining the property (including maintaining the grounds, roofs, exteriors of buildings, and the insurance program for Club Homes III) in order to maintain the values of the homes within Club Homes III.  (Doc. No. 120, p. 24, 26).

Club Homes III contracted with Argus to provide property management services for Club Homes III.  (Doc. No. 120, p. 29).  Pursuant to their property management agreement, Club Homes III pays Argus a fee to administer Club Homes III's accounting, collect the quarterly assessments, get purveyors to do various different jobs (such as cutting the grass and repairing the roofs), and advise Club Homes III as to what needs to be done.  (Doc. No. 120, p. 29).  Argus did not undertake a duty to provide security for Club Homes III's residents.  (Doc. No. 129, p. 79; Doc. No. 126-2, p. 6, #4).

Club Homes III is not required to, nor does it, provide security services for its residents. (Doc. No. 120, p. 31-32).  The only security provided to Club Homes III residents is through Heritage Oaks, which provides two gates.  (Doc. No. 120, p. 33).  Neither gate is located within Club Homes III.  (Doc. No. 120, p. 34).  Club Homes III does not control or have any ownership

---

[11]The President of the Club Homes III homeowners' association, Tom Wall, testified that Club Homes III is a separate and distinct entity from the Heritage Oaks master association. (Doc. No. 120, p. 24-25, 75).

interest in either gate.  (Doc. No. 120, p. 35).

Club Homes III decided to obtain bids for the painting project that occurred in February of 2004.  (Doc. No. 120, p. 35).  Club Homes III directed Argues to solicit and screen bids and then provide Club Homes III with proposals for the painting project.  (Doc. No. 120, p. 37).

Argus supplied two proposals to Club Homes III–one from Siesta Key Decor and one from Cotton & Martin.  (Doc. No. 126-2, p. 20, #1).  Argus investigated these companies by speaking with the company representatives, obtaining a list of references and following up as to quality of work and satisfaction with job performance, and obtaining customer feedback.  (Doc. No. 126-2, p. 20, #1).  With regards to the reference check of Cotton & Martin, Argus spoke with two other developments that had previously used Cotton & Martin, and Argus did not receive any negative feedback.  (Doc. No. 126-2, p. 20, #1).   Argus also received five customer satisfaction letters from Cotton & Martin's past customers.  (Doc. No. 126-2, p. 20, #1).  Argus did not conduct any criminal background checks on Cotton & Martin's painting employees. (Doc. No. 126-2, p. 20, #1).

Club Homes III relied on Argus to screen the painting companies as far as their reputation and service, and Club Homes III made the decision as to which painting company to hire.  (Doc. No. 120, p. 37-38).  Argus had no input or control over the selection of Cotton & Martin for the painting project.  (Doc. No. 126-2, p. 11, #1).  Club Homes III selected Cotton & Martin for the painting project.  (Doc. No. 120, p. 38).

Prior to hiring Cotton & Martin, Club Homes III did not have any notification or information that there were any prior burglaries or other problems with Cotton & Martin or their painting employees.  (Doc. No. 120, p. 47; Doc. No. 126-2, p. 7, #7).  Other than the allegations

17

made by Plaintiff, no one residing at Club Homes III has made an allegation of wrongdoing against Cotton & Martin.  (Doc. No. 120, p. 47).  Club Homes III did not authorize Cotton & Martin to enter inside any of the units of the Club Homes III residents, since all of the painting was to be done to the exterior of the units.  (Doc. No. 120, p. 42).

### B.  Negligence Claim against Club Homes III for Failing to Provide Proper Security

Plaintiff asserts a negligence claim against Club Homes III for failing to provide proper security for the residence.  Club Homes III argues that it cannot be held liable for failing to provide proper security, unless Plaintiff shows that Club Homes III owed Plaintiff such a duty. See Rouzie v. Alterman Transport Lines, Inc., 596 So. 2d 747, 748-49 (Fla. 3d DCA 1992). Furthermore, Club Homes III argues that Plaintiff cannot put forth any evidence that Club Homes III owed Plaintiff a duty to provide proper security or that Club Homes III breached such a duty.  The Court agrees that Plaintiff has not made such a showing.

To the extent that Club Homes III owed Plaintiff a duty to protect her from known risks of harm,[12] Plaintiff has not shown that Club Homes III had any such knowledge.  In the absence of actual or constructive knowledge of similar risks of harm, Club Homes III cannot be held liable for the harm.  See Ameijeiras v. Metropolitan Dade County, 534 So. 2d 812, 813-14 (Fla. 3d DCA 1988).  Plaintiff has not shown that Club Homes III had actual or constructive knowledge that theft of her property was reasonably foreseeable based on similar thefts in the Club Homes III area.  As such, Plaintiff cannot hold Club Homes III liable.

The Court notes that Plaintiff has submitted what appears to be a map and a crime

---

[12]Robert-Blier v. Statewide Enterprises, Inc., 890 So. 2d 522, 524 (Fla. 4th DCA 2005).

analysis report for the area surrounding the residence.[13]  (Doc. No. 149, Ex. 26).  However, the

extent of the physical area covered by the map and report is unclear; i.e., the Court cannot

discern whether the entire area depicted is within Club Homes III.  If the burglaries that are

depicted on the map and report did not occur within Club Homes III, then they are not probative

as to whether Club Homes III owed Plaintiff a duty based on the foreseeability of the theft.  See

Admiral's Port Condominium Assoc., Inc. v. Feldman, 426 So. 2d 1054, 1055 (Fla. 3d DCA

1983).  Furthermore, even if some or all of the residential burglaries depicted on the map and

report occurred within Club Homes III, Plaintiff has not submitted any evidence that Club

Homes III had any knowledge of them.  Therefore, the Court grants Club Homes III's motion for

summary judgment on this claim.

### C.  Claims against Argus for Negligent Hiring and Negligent Supervision

Plaintiff asserts negligence claims against Argus for failing to provide honest employees

to perform the contracted painting services and for failing to provide proper supervision of the

painters.  The Court construes these claims as claims for negligent hiring and negligent

supervision.

In order to succeed on a claim of negligent hiring, Plaintiff must show that (1) Argus was

required to make an appropriate investigation of the painter(s) that took Plaintiff's property and

failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the

painter(s) for the particular duty to be performed; and (3) it was unreasonable for Argus to hire

the painter(s) in light of the information it knew or should have known.  See Malicki, 814 So. 2d

---

[13]Even though this unauthenticated document appears to be inadmissable hearsay in its
present form, the Court will address it.

19

at 362 (citation omitted).  The Court finds that Plaintiff has not made such a showing.

Plaintiff has not submitted any evidence that Argus was required to do a more thorough investigation of Cotton & Martin and its painters than it did.  Argus investigated Cotton & Martin by speaking with the company representative, obtaining a list of references and following up as to quality of work and satisfaction with job performance, and obtaining customer feedback. Argus spoke with two other developments that had previously used Cotton & Martin, and Argus did not receive any negative feedback.  Argus also received five customer satisfaction letters from Cotton & Martin's past customers.  While Argus did not conduct any criminal background checks on Cotton & Martin's painting employees, there is no evidence before the Court that it was required to do so.

Furthermore, the evidence shows that Argus did not hire Cotton & Martin; instead, Club Homes III made the decision as to which paint company to hire.  Therefore, the Court finds that Argus is entitled to summary judgment on Plaintiff's negligent hiring claim.

Likewise, Argus is entitled to summary judgment on Plaintiff's negligent supervision claim.  "The primary distinction between a claim for negligent hiring and a claim for negligent supervision . . . concerns the time at which the employer is charged with knowledge of the employee's unfitness."  Id. at 362 n.15 (citation omitted).  Plaintiff has not submitted any evidence that Argus knew or should have known of any information about Cotton & Martin or the painters that showed that they were unfit for the painting project.

### D.  Negligence Claim against Argus for Failing to Provide Proper Security

Plaintiff asserts a negligence claim against Argus for failing to provide proper security for the residence.  Defendant argues that Plaintiff has not submitted any evidence that Argus owed her such a

duty or breached such a duty.  The Court agrees and finds that Argus is entitled to summary judgment on this claim.

## VI.  Heritage Oaks' Motion for Summary Judgment

Heritage Oaks moves for summary judgment.  While Heritage Oaks is named in the complaint, there is not a specific claim asserted against it.  On that basis alone, Heritage Oaks is entitled to summary judgment.  Furthermore, to the extent that Plaintiff is asserting a negligence claim for failing to provide proper security, Heritage Oaks is entitled to summary judgment.

Heritage Oaks is the master association.  (Doc. No. 20, p. 75).  Club Homes III is a homeowners' association, and its homes are located within Heritage Oaks.  (Doc. No. 120, p. 23-24).

Heritage Oaks filed the Declaration of Covenants, Conditions and Restrictions for Heritage Oaks Golf & Country Club ("the Declaration").  (Doc. No. 120, Ex. 2).  Section 1.5 of the Declaration defines the "Club" as Heritage Oaks.  Section 13.4 of the Declaration provides that Heritage Oaks cannot be held liable for failing to provide security.  Specifically, Section 13.4 provides:

Security: non-liability of Declarant and Club.  The Declarant and the Club shall not be liable if security services are not provided.

ALL PERSONS USING OR OCCUPYING ANY PORTION OF THE COMMUNITY ARE RESPONSIBLE FOR THEIR OWN SECURITY AND THE SECURITY OF THEIR OWN PROPERTY.

THE CLUB, THE DECLARANT AND THE DEVELOPER ARE NOT INSURERS OR GUARANTORS OF SECURITY FOR PERSONS OR PROPERTY WITHIN THE COMMUNITY.

THE CLUB, THE DECLARANT AND THE DEVELOPER ARE NOT LIABLE IN ANY WAY ON ACCOUNT OF LOSS, DAMAGE OR INJURY RESULTING FROM LACK OF SECURITY, OR THE LACK OF EFFECTIVENESS OF ANY SECURITY MEASURES UNDERTAKEN.  THE DECLARANT AND DEVELOPER MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, RELATIVE TO . . . ANY SECURITY MEASURES

21

UNDERTAKEN WITHIN THE COMMUNITY.

(Doc. No. 120, Ex. 2).

Heritage Oaks argues that to the extent that Plaintiff is asserting a negligence claim for failing to provide proper security, it is entitled to summary judgment, because Plaintiff has not shown that Heritage Oaks owes her such a duty or that it breached such a duty.  Heritage Oaks points out that it did not hire Cotton & Martin, it did not control the premises where the alleged theft occurred, and it did not have a duty to provide security to residents, pursuant to Section 13.4 of the Declaration.  Since Plaintiff has not shown that Heritage Oaks' conduct created the alleged risk that ultimately gave rise to Plaintiff's damages, Plaintiff has not shown that Heritage Oaks owed her a duty that was breached. See Aguila v. Hilton, Inc., 878 So. 2d 392, 397 (Fla. 1st DCA 2004)(stating that in order for there to be a duty, there must be some evidence that the risk was created by the alleged negligence of the defendant).  As such, Heritage Oaks is entitled to summary judgment.

## VII.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)      Defendant McCormack's Motion for Summary Judgment (Doc. No. 114) is

**GRANTED**;

(2)      Defendant Lunsmann's Motion for Summary Judgment (Doc. No. 115) is **GRANTED**;

(3)      Defendant Haack's Motion for Summary Judgment (Doc. No. 116) is **GRANTED**;

(4)      Defendants Ted A. Martin and Cotton & Martin's Motion for Summary Judgment

(Doc. No. 121) is **GRANTED**;

(5)      Defendants Heritage Oaks Club Homes III Association, Inc. and Argus Property

Management, Inc.'s Motion for Summary Judgment (Doc. No. 123) is **GRANTED**;

22

(6)      Defendant Heritage Oaks Golf and Country Club, Inc.'s Motion for Summary

Judgment (Doc. No. 118) is **GRANTED**; and

(7)      The Clerk is directed to enter judgment in favor of Defendants, terminate all pending

motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of April, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Plaintiff